# 23-721

## In the United States Court of Appeals for the Second Circuit

---

KHALILAH SULUKI,

*Plaintiff-Appellant,*

V.

CREDIT ONE BANK, NA,

*Defendant-Appellee,*

CAPITOL ONE BANK, NA, COMENITY CAPITAL BANK,

*Defendants.*

---

On Appeal from the United States District Court
for the Southern District of New York
No. 21-cv-1156 (Hon. Sidney H. Stein)

---

### REPLY BRIEF FOR PLAINTIFF-APPELLANT

---

LEONARD A. BENNETT
CRAIG CARLEY MARCHIANDO
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, VA 23601
Washington, DC 20006
(757) 930-3660

ABEL L. PIERRE
LAW OFFICE OF ABEL L. PIERRE, P.C.
140 Broadway, 46th Floor
New York, NY 10005
(212) 766-3323

ALISA TIWARI
MATTHEW W.H. WESSLER
GUPTA WESSLER LLP
2001 K Street, NW
Suite 850 North
(202) 888-1741
*alisa@guptawessler.com*

February 9, 2024                    *Counsel for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

Table of authorities ................................................................................ii

Introduction..........................................................................................1

Argument.............................................................................................3

    I.    Credit One's investigation was not reasonable as a matter of law because it ignored relevant evidence and failed to take basic investigative steps. ................................................................. 3

    II.   Credit One has not established, as a matter of law, that it would have verified the account if it had completed a reasonable investigation. .........................................................................11

        A.   A jury could conclude that Credit One likely would have reported the account as inaccurate had it investigated reasonably.........................................................................11

        B.   At the very least, a jury could conclude that Credit One likely would have reported the account as unverifiable had it investigated reasonably...................................................18

    III.  Credit One willfully violated the FCRA. .............................................22

        A.   Ample evidence indicates that Credit One recklessly violated the FCRA....................................................................22

        B.   Credit One failed to meaningfully respond to Ms. Suluki's arguments on knowledge.............................................27

Conclusion...........................................................................................28

# TABLE OF AUTHORITIES

## Cases

*Aetna Casualty & Surety Co. v. Aniero Concrete Co.*,
    404 F.3d 566 (2d Cir. 2005)..................................................................15

*Ahn ex rel. Hong v. Bank of America*,
    2023 WL 4763991 (C.D. Cal. July 25, 2023) ........................................10

*Birmingham v. Experian Information Solutions, Inc.*,
    633 F.3d 1006 (10th Cir. 2011)............................................................. 25

*Boggio v. USAA Federal Savings Bank*,
    696 F.3d 611 (6th Cir. 2012) ....................................................18, 24, 25

*Burns v. Ford Motor Credit Co.*,
    2021 WL 1962856 (E.D. Pa. May 17, 2021) ........................................... 7

*Chaitoff v. Experian Information Solutions, Inc.*,
    79 F.4th 800 (7th Cir. 2023)...................................................................8

*Felts v. Wells Fargo Bank, N.A.*,
    893 F.3d 1305 (11th Cir. 2018) ....................................................... 13, 17

*Ferrarelli v. Federated Financial Corp. of America*,
    2009 WL 116972 (S.D. Ohio Jan. 16, 2009) .........................................4

*Gorman v. Wolpoff & Abramson, LLP*,
    584 F.3d 1147 (9th Cir. 2009)....................................................... 3, 4, 24

*Gross v. CitiMortgage, Inc.*,
    33 F.4th 1246 (9th Cir. 2022) ........................................................... 3, 14

*Hinkle v. Midland Credit Management, Inc.*,
    827 F.3d 1295 (11th Cir. 2016) ...................................................... *passim*

*Horton v. Trans Union, LLC*,
    2015 WL 1055776 (E.D. Pa. Mar. 10, 2015) .......................................... 7

*Hudson v. Babilonia*,
    192 F. Supp. 3d 274 (D. Conn. 2016)...................................................13

*In re World Trade Center Disaster Site Litigation*,
    722 F.3d 483 (2d Cir. 2013) ................................................................16

*Ingram v. Experian Information Solutions, Inc.*,
    83 F.4th 231 (3d Cir. 2023) ............................................................... 25

*Jeffreys v. City of New York*,
    426 F.3d 549 (2d Cir. 2005) ...............................................................15

*Johnson v. MBNA America Bank, NA*,
    357 F.3d 426 (4th Cir. 2004) ....................................................... *passim*

*Johnson v. TD Bank USA, N.A.*,
    2020 WL 13614343 (N.D. Ill. July 23, 2020) ......................................15

*King v. Asset Acceptance, LLC*,
    452 F. Supp. 2d 1272 (N.D. Ga. 2006) ................................................10

*Lennon v. Miller*,
    66 F.3d 416 (2d Cir. 1995) .................................................................. 3

*McIntyre v. RentGrow, Inc.*,
    34 F.4th 87 (1st Cir. 2022) ................................................................ 25

*Milgram v. Chase Bank USA, N.A.*,
    72 F.4th 1212 (11th Cir. 2023) ......................................................5, 21

*Miller v. Westlake Services LLC*,
    637 F. Supp. 3d 836 (C.D. Cal. 2022) ................................................. 7

*Nickels v. Scott Credit Union*,
    2022 WL 2390121 (E.D. Mo. July 1, 2022) ......................................... 7

*Safeco Insurance Co. of America v. Burr*,
    551 U.S. 47 (2007) ......................................................................24, 26

*Saunders v. Branch Banking & Trust Co. of Virginia*,
    526 F.3d 142 (4th Cir. 2008) ............................................................ 25

*Seamans v. Temple University*,
    744 F.3d 853 (3d Cir. 2014) ............................................................. 24

*Sessa v. Trans Union, LLC,*
    74 F.4th 38 (2d Cir. 2023) ................................................................. 21

*Stafford v. PNC Bank,*
    2022 WL 17217459 (C.D. Cal. Aug. 12, 2022) ........................................ 7

*Stewart v. Equifax Information Services, LLC,*
    320 F. Supp. 3d 1186 (D. Kan. 2018) ................................................27

*Wood v. Credit One Bank,*
    277 F. Supp. 3d 821 (E.D. Va. 2017) ........................................ 6, 26, 27

*Woods v. LVNV Funding, LLC,*
    27 F.4th 544 (7th Cir. 2022) ........................................................ 5, 6

## Statutes

15 U.S.C. § 1681e ............................................................................. 21

15 U.S.C. 1681s-2 ..........................................................19, 21, 22, 25

## Regulations

12 C.F.R. § 1022.3 ............................................................................ 25

# INTRODUCTION

It's no secret that Ms. Suluki's mother, Khadijah, was using the card that Ms. Suluki disputed as fraudulent. Khadijah's phone number and address were on the card application. Her debit card paid the bills. And she even called the bank to make payments. Nevertheless—even though Ms. Suluki told the bank under penalty of perjury that her mother had fraudulently opened the account—Credit One ignored all this evidence and concluded that Ms. Suluki had opened and used the card.

The FCRA requires furnishers to conduct a reasonable investigation when a consumer disputes information on their credit report. But a furnisher can't just pay lip service to the requirement: It must perform a "careful inquiry" that is tailored to the "specific nature of [the consumer's] dispute." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430-31 (4th Cir. 2004).

Credit One's main theory for affirmance—that its investigations were categorically reasonable—runs headfirst into that requirement. That's because the bank repeatedly ignored Ms. Suluki's statements that her mother committed fraud and overlooked obvious evidence connecting Khadijah to the account. So, as the district court recognized, Credit One's investigatory failures mean that a jury is entitled to determine whether the bank violated its crucial statutory obligation.

Even assuming its investigations were unreasonable, though, Credit One claims that summary judgment is still required. A reasonable investigation, the bank

says, wouldn't have changed anything. But considering any of Khadijah's many connections to the card would have almost certainly led a careful investigator to conclude that she was using the card and thus that the bank's original conclusion about the account was inaccurate. And reviewing Ms. Suluki's affidavit would have tipped the scale even further in her favor—as the bank's written policies make clear. At minimum, a jury should have considered this question.

Credit One resists this conclusion, speculating that any additional investigation would have shown that Khadijah had Ms. Suluki's permission to use the card. The district court reached a similar conclusion. But neither the bank nor the court point to any evidence that is categorically "sufficient to prove" permission. *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016). All they have is Khadijah's say-so—evidence that only a jury can assess and deem credible.

The bank also attempts to defend the district court's view that no evidence indicates willfulness. But like the district court, the bank simply ignores the record, pretending that it does not have the type of cursory, de-facto investigative policies that can establish a willful FCRA violation. Credit One offers no explanation for why a jury could not deem those policies—which the record establishes exist—reckless. Nor does it explain why a jury could not find that Credit One knew it was violating the law because its written policies require a far more thorough approach.

Because a jury is entitled to decide all of these issues, this Court should reverse.

# ARGUMENT

## I. Credit One's investigation was not reasonable as a matter of law because it ignored relevant evidence and failed to take basic investigative steps.

Credit One begins its argument not by defending the district court's decision but by disagreeing with it. Although the district court held that "the adequacy of the steps" Credit One took in its investigations was not reasonable as a matter of law, JA-390, Credit Once contends that it was. "Disputes over reasonableness" however, "are usually fact questions for juries." *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995). That's "because the jury's unique competence in applying the 'reasonable man' standard" ordinarily precludes summary judgment. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009). On the rare occasion summary judgment is appropriate, it is because only "one conclusion about the conduct's reasonableness is possible." *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1252 (9th Cir. 2022). Credit One comes nowhere close to meeting that standard here.

**1.** Credit One claims the reasonableness of its investigations is "beyond question" because the procedures it followed were "thorough" and "holistic." Resp. Br. 2, 17, 18. Hardly. The bank's investigators ignored one of the most fundamental requirements of reasonableness in this context—that an investigation be tailored to "the specific nature of [the consumer's] dispute." *Johnson*, 357 F.3d at 431; *see also* Resp. Br. 12 (recognizing that the "[r]easonableness of a furnisher's investigation

3

depends on the nature of the consumer's dispute"). For identity-theft disputes—especially when a consumer identifies the accused fraudster—furnishers must search for and consider obvious evidence that the accused fraudster obtained and used the account. *Cf. Gorman*, 584 F.3d at 1155 ("[A]n 'investigation' requires an inquiry likely to turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute.").

Credit One failed to do that here. It had in its possession Ms. Suluki's dispute letters and her affidavit stating, under oath, that her mother, Khadijah, had fraudulently obtained the credit card. Opening Br. 17-20. Armed with this information, Credit One should have, at a minimum, taken steps to investigate whether those statements could be confirmed. *See Gorman*, 584 F.3d at 1156 (noting that a furnisher cannot escape its obligations "by merely rubber stamping," particularly "where circumstances demand[] a more thorough inquiry"). But Credit One failed to even consider—let alone investigate—that the mother opened and used the account without Ms. Suluki's permission. Instead, investigators relied on, and rubberstamped, evidence that the mother opened the account (her phone number and address) to conclude that the account belonged to Ms. Suluki. *See, e.g.,* JA-268 (noting that the account phone number was registered to "Khadijah"); *cf. Ferrarelli v. Federated Fin. Corp. of Am.*, 2009 WL 116972, at *6 (S.D. Ohio Jan. 16, 2009) (summary judgment inappropriate where furnisher concluded that disputed

account was consumer's based on his connection to the fraudster, but "also knew that it was [the fraudster] who was accused of stealing [the consumer's] identity").

The two cases Credit One relies on only reinforce how inadequate Credit One's investigations were here. The bank argues that its investigations "exceed[ed]" those in *Milgram v. Chase Bank USA, N.A.*, 72 F.4th 1212 (11th Cir. 2023), and *Woods v. LVNV Funding, LLC*, 27 F.4th 544, 550 (7th Cir. 2022), which were held reasonable. Resp. Br. 22-23. But in *Milgram*, the "nature of the [consumer's] dispute," *Johnson*, 357 F.3d at 431, was narrower: The question was whether the furnisher reasonably investigated a third party's "apparent authority" to use a card in light of the consumer's new evidence, 72 F.4th at 1220-21. The court recognized that reasonableness depends on the specific "circumstances" of the dispute and "what information the furnisher has available to it and what steps it takes to gather more information." *Id.* at 1218. But applying that standard, the court in *Milgram* recognized that the furnisher, Chase, *had* considered and reasonably assessed the evidence the consumer identified. And beyond that, the consumer had failed to "explain[] what Chase should have done differently"—"whom it should have talked to or what documents it should have considered that might have affected its apparent-authority analysis." *Id.* at 1221. There was, in other words no meaningful dispute over reasonableness.

And in *Woods*, the furnisher did more than just a "pro forma" investigation of "primarily of matching [a consumer's] name and address to the information in its files." 27 F.4th at 550. It reviewed and relied on affirmative evidence that the debt was accurate: commentary in a police report indicating that the fraud claim was false. And then twice it invited the consumer "to provide additional documentation to help make his case[,] attaching a blank identity theft affidavit for him to complete." *Id.* The consumer, however, "responded to this letter with silence" and identified no "information that could have done much to clear things up." *Id.* at 550-51. "Under th[o]se circumstances," the court could not "say that [the furnisher's] investigation was unreasonable." *Id.*

Unlike in these cases, Credit One's approach here was to *ignore* relevant evidence—including, among other things, the affidavit it requested swearing that the account was fraudulent and identifying the fraudster; phone number, address, and debit card links to the fraudster; and references in the account notes to the fraudster using the account. Indeed, in similar circumstances, courts have held that a furnisher's reliance on superficial procedures instead of completing a "careful inquiry" into the alleged fraudster's potential connection to the account is *unreasonable* as a matter of law. *See, e.g.*, *Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 853 & n.53 (E.D. Va. 2017); *cf. Miller v. Westlake Servs. LLC*, 637 F. Supp. 3d 836, 851 (C.D. Cal.

2022) (investigation unreasonable as a matter of law when investigators ignored important information in account notes).

But at minimum such an approach cannot, as Credit One contends, justify a grant of summary judgment *in its favor*. Because—as Credit One itself admits (at 14)—the evidence Credit One relied on was "equally consistent" with the possibility that her mother "stole [Ms. Suluki's] identity," a jury must decide whether the furnisher's investigation was reasonable. *Nickels v. Scott Credit Union*, 2022 WL 2390121, at *6 (E.D. Mo. July 1, 2022); *see, e.g., Johnson*, 357 F.3d at 431 (holding that a jury could "reasonably conclude" that investigation was unreasonable when furnisher relied on evidence "equally consistent" with allegations that the account belonged only to consumer's husband); *Stafford v. PNC Bank*, 2022 WL 17217459, at *5 (C.D. Cal. Aug. 12, 2022) (denying summary judgment where it "did not appear" that furnisher "investigate[d]" consumer's allegations that alleged fraudster "obtained the loan" in the plaintiff's name); *Horton v. Trans Union, LLC*, 2015 WL 1055776, at *10 (E.D. Pa. Mar. 10, 2015) (denying summary judgment and recognizing that furnisher could "have done more" than just rely on data-matching to investigate an identity-fraud dispute); *Burns v. Ford Motor Credit Co.*, 2021 WL 1962856, at *1, *5 (E.D. Pa. May 17, 2021) (similar).

**2.** Credit One's focus (at 7-9, 18-22) on the steps its investigators supposedly took does not change the analysis. For instance, it says that its investigators consulted

the card application and LexisNexis, identified the frequency of payments, and reviewed internal predictive scores that supposedly identify fraud. But regardless of what they might look like on paper, these steps are not categorically reasonable under the circumstances. That is because they permitted Credit One to complete its investigations without scrutinizing the links between the alleged fraudster, Ms. Suluki, and the account to determine whether Ms. Suluki's fraud claim could be substantiated. *Cf. Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 819 (7th Cir. 2023) (fact dispute as to reasonableness where investigators "repeat[ed] the same ineffective steps").

Ultimately, Credit One doesn't dispute that its investigators used links between the alleged fraudster and the account information to hold Ms. Suluki "responsible for the Account." Resp. Br. 14. It just says (at 22) they had a reason for doing so: According to Credit One, the evidence "matched" the mother's "explanation that she and Suluki had opened the account together" and that the mother was authorized to use it.

This claim cannot be reconciled with the record. Khadijah's "explanation" about opening the account wasn't in *any* of the materials the investigators claimed to have reviewed. JA-210; *see* JA-202. So Credit One's investigators *couldn't* have reached the conclusion its lawyers have now proffered. Instead, Credit One's investigators determined that Ms. Suluki—and only Ms. Suluki—opened and used

8

the account by relying on links to her mother. *See* JA-270 (Perry's notes); JA-267-68 (Reaux's notes); Resp. Br. 20-21 (admitting that Mr. Perry held Ms. Suluki responsible for the account because of links to Ms. Suluki, not her mother).

The record also undermines Credit One's claim that its investigators *even took* the steps it says they took. Credit One asserts that Perry's and Reaux's investigations were "thorough" because they reviewed predictive fraud scores, deduced payment frequency, and found "strong links" to Ms. Suluki in LexisNexis. Resp. Br. 17-22. Perry's and Reaux's internal notes, however, contradict these claims. Those notes indicate that investigators took none of those steps and instead looked for two links between Ms. Suluki's information in LexisNexis and the card application so they could quickly resolve the dispute. JA-270 (Perry); JA-267-68 (Reaux); *see* Opening Br. 19-21. In fact, rather than finding "strong links," Reaux noted that the links she found—and relied on—were *not* strong. JA-268 (noting that the account phone number belonged to "Khadijah," not Ms. Suluki); *id.* (noting that the card application did not have Ms. Suluki's "best address"). Their entire investigatory process likely lasted no more than a minute or two. *See* JA-125 (admitting investigation lasted only one minute); Resp. Br. 10 (stating all investigators follow the same process). That creates a credible fact dispute even as to whether investigators

9

actually performed the steps Credit One defends as reasonable, and easily shows why summary judgment is inappropriate.[1]

**3.** Finally, Credit One's claim that the steps its investigators took were conclusively reasonable is also contradicted by its own policies. For instance, Credit One's written fraud policy tells investigators "to identify any potential links to the person(s) committing [the] fraudulent activity," including "any relevant connections between the Card Member and [a] relative[]" accused of fraud. *See* JA-204; JA-206. That same policy instructs investigators to "[r]eview [the account] for payment type(s)" to see who keeps the account active and requires an extensive review of the account notes. JA-205. And it is similarly explicit about affidavits, directing investigators to "[r]eview if an affidavit was received." JA-206. Credit One does not dispute that its policies require taking these steps in the face of an identity-theft dispute or that its investigators failed to follow them. As courts have frequently explained, "[t]he existence of [a furnisher's] procedures" coupled with credible evidence of the furnisher's "failure to follow them could allow a reasonable jury to conclude that [the furnisher's] investigation was inadequate." *King v. Asset Acceptance, LLC*, 452 F. Supp. 2d 1272, 1279 (N.D. Ga. 2006); *Ahn ex rel. Hong v. Bank of Am.*, 2023 WL 4763991, at \*12 (C.D. Cal. July 25, 2023).

---

[1] If more was necessary, as is explained *infra*, Perry and Reaux's de facto "two-link" approach, as well as their reliance on police reports for deleting accounts, are also unreasonable. *See infra* Section III.A (recklessness); Opening Br. 51-56.

## II. Credit One has not established, as a matter of law, that it would have verified the account if it had completed a reasonable investigation.

Once Credit One gets around to defending the district court's decision, it argues (at 14) that "no reasonable investigation would have shown that Suluki was not responsible for the Account." And failing that, Credit One says that, "[a]t worst," a reasonable investigation would have uncovered evidence that "was consistent with both Suluki's account and her mother's," and so Credit One was entitled to verify the account.

Both arguments fail. First, a reasonable investigation would have required considering multiple pieces of evidence—including sworn statements identifying the alleged fraudster and account information indicating that person's use of the card—from which a jury could conclude that Credit One likely would have deemed the reporting inaccurate. And second, even if the evidence would have been at most in equipoise had Credit One performed a reasonable investigation, that still would have left Credit One without the type of reliable evidence necessary to verify the account.

### A. A jury could conclude that Credit One likely would have reported the account as inaccurate had it investigated reasonably.

**1.** Defending the district court's decision, Credit One points (at 27-31) to certain pieces of evidence that, it says, would have led it to conclude the account belonged to Ms. Suluki regardless of what more it could have uncovered. According

11

to the bank, that evidence includes (1) that the account was paid on time, (2) that the application address and phone number were associated with Ms. Suluki in LexisNexis, (3) that the account email address had "suluki" in it, and (4) that predictive fraud scores indicated there was no fraud. Given facts like these, Credit One claims, no jury could conclude that it likely would have reached a different result had it performed a reasonable investigation.[2]

But Credit One's attempt to cherry-pick from the record cannot—as a matter of law—defeat causation. That's because the only evidence the bank identifies actually connecting Ms. Suluki to the card was *also* connected to the accused fraudster—and, in some cases, even more closely connected to the fraudster than to Ms. Suluki. *See* Opening Br. 35-36. Consider, for instance, the account's phone number. That number was "registered" to the mother, JA-268, and only "link[ed]" to Ms. Suluki because of a family plan, JA-270. *See* JA-65; JA-296. Similarly, the account's address was the mother's—Experian even indicated that it was not Ms.

---

[2] In passing, Credit One asserts that asking whether it "could have reached a different result" for the causation inquiry would permit "limitless speculation in every case." Resp. Br. 27 n.4 (objecting to the use of the word "could"). But that phrasing is just a shorthand for the fuller inquiry. *See* Opening Br. 31 n.3. In full—applying both the preponderance-of-the-evidence and summary judgment standard—the inquiry asks whether a reasonable jury could find that Credit One more likely than not would have come to a different conclusion had it investigated reasonably. Opening Br. 30-31. Or whether a reasonable jury could find that Credit One likely would have come to a different conclusion had it investigated reasonably. For clarity, we use the latter in this brief.

Suluki's "best address." JA-268; *see* JA-46-54; JA-140 (account address); JA-141 (Ms. Suluki's address). Given those circumstances, a reasonable jury could hold that, because such evidence was more consistent with Ms. Suluki's fraud allegation than inconsistent, a careful investigator likely would have held that the account in Ms. Suluki's name was inaccurate. *See Hudson v. Babilonia*, 192 F. Supp. 3d 274, 302 (D. Conn. 2016) (jury could conclude that a reasonable investigation should not have verified an account when it only had indirect links to consumer); *supra* p. 7 (jury could find that a reasonable investigation should not have verified account when it only had evidence consistent with a consumer's fraud allegations).

Credit One's attempt to cherry-pick the record, however, reflects a more fundamental problem. The relevant causation inquiry is what Credit One likely would have learned if it had acted reasonably and "investigated the matter further"—not whether it can justify its original conclusion by pointing to select pieces of evidence. *Johnson*, 357 F.3d at 432; *see Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018) (causation inquiry considers the result "*had* the furnisher conducted a reasonable investigation").

And here, a careful investigator—performing the type of searching inquiry required by the FCRA—would have also considered numerous other links to the alleged fraudster. For instance—in addition to the phone number and address links to Khadijah—a reasonable investigation required Credit One to consider that the

email address, debit card used for payment, and application IP address were all associated with Khadijah; that the account notes proved Khadijah was using the card; and that Ms. Suluki had declared, under penalty of perjury, that Khadijah opened and used the account without permission. Armed with that information, it is hard to believe that investigators would have reached the conclusion they actually reached—that Ms. Suluki opened the account and was using the card. Rather, they almost certainly would have concluded that Khadijah opened the account and was using the card. But regardless, a jury was entitled to make that decision in the first instance. *See Gross*, 33 F.4th at 1253 (FCRA causation issues are "quintessentially one[s] for the jury").

Credit One tries to explain away some of these links to Khadijah by proposing an alternative conclusion. In the bank's view, even if its investigators had considered this evidence, they would have concluded that Ms. Suluki authorized her mother to open and use the account. Resp. Br. 28 (payment method); *see* Resp. Br. 36 (IP address). But Credit One offers no clear explanation for *why* its investigators would have investigated further after finding links to Khadijah—and the brevity of its investigations indicates otherwise, *see* JA-125. It also fails to explain *how* its investigators would have concluded the mother had permission. That uncertainty means Credit One has not defeated causation as a matter of law. *Cf. Aetna Cas. &*

14

*Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 574 (2d Cir. 2005) (explaining that "ambiguities" must be interpreted "against the moving party").

If Credit One's answer is that it would have called Khadijah and taken her statements at face value (while conversely refusing to credit Ms. Suluki), that gets the bank nowhere. Only a jury can decide whether a careful investigator likely would have believed Khadijah. *See Johnson v. TD Bank USA, N.A.*, 2020 WL 13614343, at *3 (N.D. Ill. July 23, 2020) (refusing to grant summary judgment on FCRA causation because the court "would need to weigh the evidence and determine the credibility of witness testimony"); *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (credibility assessments reserved for jury).[3]

**2.** None of this, however, gets to Credit One's main objection to the evidence supporting Ms. Suluki's fraud claim—the affidavit. Credit One initially insists (at 34) that an affidavit is not "necessarily dispositive under § 1681s-2(b)." That misses the point. Although *no* evidence is necessarily "dispositive" under the FCRA, here, Credit One's own fraud policy, as well at its justifications for denying Ms. Suluki's

---

[3] In any event, the record is replete with evidence that Khadijah was not, in fact, believable. JA-138 (Khadijah lying to Credit One, claiming Ms. Suluki's social security number was her own, to gain access to the account); JA-299 (Khadijah stating that Ms. Suluki and her opened the card in her bedroom, contrary to the IP address's location); JA-317 (Khadijah listening to her "girlfriend" through an ear piece during her own deposition). Given this, a reasonable jury could find that—if a careful investigator had, in fact, reached out during a reasonable investigation—they likely wouldn't have been convinced.

15

claims, indicate that affidavits are afforded great weight in its investigations. Opening Br. 34-35. That creates a fact dispute as to whether considering the affidavit likely would have led investigators to report the account as inaccurate, especially given the other evidence supporting Ms. Suluki's fraud claim.

Next, Credit One attempts to sidestep the importance of affidavits in its investigations. It says that, policies aside, it was right not to consider *this* affidavit because Ms. Suluki "failed to follow its instructions." Resp. Br. 32. But a consumer's failure to precisely follow a form's instructions is irrelevant when it comes to an affidavit's significance. Legal significance comes from statements being made under penalty of perjury. *See, e.g.*, *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013) (discussing the significance of statements made "under penalty of perjury"). Here, Ms. Suluki's affidavit made clear that she "affirm[ed] under penalty of perjury" that the account was not hers, and that she made *none* of the charges. JA-141. What's more, Credit One already recognizes the legal significance of similar attestations—it affords *dispositive* weight to identical affidavits so long as they come on FTC letterhead. JA-171-73 (Credit One investigator admitting FTC and Credit One affidavits are "essentially" the same with the "difference being [that] one comes from the FTC and the other is sent from Credit One Bank to the card member"); JA-216 (describing the dispositive weight of FTC affidavits). Credit One's treatment of FTC affidavits is enough to create a fact dispute as to whether a reasonable

16

investigation considering Ms. Suluki's affidavit likely would have come out differently.[4]

Credit One also argues (at 33-34) that Ms. Suluki's affidavit was immaterial because its investigators do not rely on affidavits that fail to attach a police report or are otherwise incomplete. The district court relied on a similar assertion—that investigators only delete accounts with two links to the consumer if they receive an identity theft report—in granting summary judgment on causation. *See* JA-392 ("[N]o alternative investigation [] would have allowed Credit One to determine that Suluki did not give her mother permission to open the account, short of relying on a police or FTC report.").

But a furnisher cannot rely on an unreasonable practice to defeat causation. An *unreasonable* practice does not help a furnisher show that, "had the furnisher conducted a *reasonable* investigation, the result would [not] have been different." *Felts*, 893 F.3d at 1313 (describing the causation inquiry) (emphasis added). That makes sense. Otherwise, a furnisher could simply defeat causation by, for instance, asserting that it verifies accounts if the consumer's last name begins with the letter "S."

---

[4] Credit One suggests (at 32) that the affidavit was "[a]mbiguous" because Ms. Suluki wrote her own name and address where she was supposed to put the accused fraudster's. But it cannot dispute that Ms. Suluki wrote "Khadijah Suluki" *right after* a question asking her to identify the fraudster. JA-141. To suggest that Ms. Suluki was identifying herself—and not her mother—as the fraudster verges on bad faith, especially in light of Ms. Suluki's repeated phone calls and dispute letters, which also identified her mother as the fraudster.

Here, Credit One cannot prevail on summary judgment by arguing that the affidavit wouldn't have mattered without a police report, or that only a police report would have been dispositive once investigators identified two links to Ms. Suluki, because it has not shown that either practice is reasonable. Nor could it. Courts have held that similar practices are not reasonable as a matter of law. *See Hinkle*, 827 F.3d at 1306 (holding that the failure to comply with bank's request to send a police report does not entitle the furnisher to curtail investigation and verify an account as accurate); *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 619 (6th Cir. 2012) (similar).

## B.     At the very least, a jury could conclude that Credit One likely would have reported the account as unverifiable had it investigated reasonably.

Falling back, Credit One claims that, even if it had performed a more searching investigation, the results would have been "inconclusive." Resp. Br. 47; Resp. Br. 14 ("[A]ll the evidence Credit One [] could have reviewed . . . was consistent with both Suluki's account and her mother's."); *see also* Dkt. 58 at 15-16 (arguing that, "no matter how far Credit One looked, it would have only discovered more conflicting evidence" and thus "it would have ended in the same place it began: faced with a 'she said'/'she said' family dispute"). Given that uncertainty in the face of conflicting information, Credit One maintains (at 47-48) that summary judgment was still appropriate because—as a matter of law—it would have been entitled to verify the account.

18

Credit One's conclusion cannot be squared with the FCRA. When a furnisher is unable to determine whether disputed information is true, the FCRA does not permit that furnisher to verify the information. *See Hinkle*, 827 F.3d at 1303 (holding that the evidence for verification must be "sufficient to prove that the information is true"). Instead, the furnisher must stop reporting it—because the information "cannot be verified," it must, at the very least, be "blocked [from] reporting." 15 U.S.C. 1681s-2(b)(1)(E). That means, when a consumer disputes an entire account as fraudulent, a furnisher must stop reporting the account if it completes a reasonable investigation but does not find evidence establishing the accountholder's identity. *See* CFPB Amicus Br. 17-20.

That statutory framework precludes summary judgment here for two reasons. First, Credit One has essentially conceded that it would not have had evidence "sufficient to prove that the [account information was] true" by admitting that it would have been genuinely uncertain about the accountholder's identity if it had investigated further. *Hinkle*, 827 F.3d at 1303.

Second, Credit One has not shown that it was entitled to verify as a matter of law. The bank has never pointed to evidence conclusively proving that the account was Ms. Suluki's. Here—where Khadijah's use of the card was apparent, *see* JA-138; JA-273—that would mean evidence that Ms. Suluki gave her mother permission to use the card. *See* CFPB Amicus Br. 20 ("[W]hether Credit One violated Section

19

1681s-2(b) . . . will turn on whether [it] acquired sufficient evidence to support the conclusion that Suluki's mother opened the account in Suluki's name with her permission."). But all Credit One has is Khadijah's say-so, which is *not* conclusive proof of anything. *See supra* p. 15 (explaining that believing Khadijah requires a credibility assessment). A reasonable jury could therefore conclude that, had Credit One performed a reasonable investigation, it likely would have concluded that the account was unverifiable.

Credit One offers a couple unpersuasive responses. First, it argues that verification only requires a "reasonable belief that the account information is accurate." Resp. Br. 45. But even if correct, applying that standard here leads to the same result. If, after reviewing all the evidence, a furnisher has a reasonable belief that fraud has not occurred, then it need not stop reporting the dispute information, and it will not be liable under the FCRA. But a furnisher does not have a reasonable belief if it lacks reliable evidence (such as "documentary evidence" or "personal knowledge") "establishing that an item of disputed information is true." *Hinkle*, 827 F.3d at 1303. And evidence that only indicates the truth of information when viewed in isolation does not prove that a furnisher's belief was reasonableness as a matter of law. *Johnson*, 357 F.3d at 431 (explaining bank's "belief" that consumer was responsible for account was not conclusively reasonable when the evidence it relied

20

on was "equally consistent" with the consumer's fraud allegations); *see supra* p. 7 (similar).[5]

Second, Credit One raises a policy concern that a decision adhering to the text of the FCRA would require furnishers to report an account as unverifiable whenever the evidence is consistent with two different stories (one claiming fraud; one claiming no fraud). *See* Resp. Br. 45. And that, Credit One worries, would "giv[e] consumers an easy roadmap to escape reporting of legitimate debts." Resp. Br. 47.

This objection is doubly wrong. For one, Credit One's unsupported policy concern cannot override the FCRA's text, which directs furnishers to stop reporting information that "cannot be verified." 15 U.S.C. 1681s-2(b)(1)(E). And in any event, Credit One's concern is overblown. All a decision in Ms. Suluki's favor would mean is that a jury could decide whether Credit One should have stopped reporting the account in Ms. Suluki's name if it genuinely would have found the evidence "inconclusive." *See* Resp. Br. 47.[6]

---

[5] Credit One appeals to *Milgram*, but that case does not help the bank either. Unlike here, the furnisher's conclusion was reasonable because the consumer's additional evidence was not "relevant," as a matter of law, to the bank's prior determination that the alleged fraudster had authority under Florida law. *Milgram*, 72 F.4th at 1221.

[6] In a footnote (at 43), Credit One argues that Ms. Suluki's approach would be inconsistent with this Court's decision requiring that a consumer show an "objectively and readily verifiable" inaccuracy to sue a consumer reporting agency under a different part of the FCRA, 15 U.S.C. § 1681e(b). *Sessa v. Trans Union, LLC*, 74 F.4th 38, 43 (2d Cir. 2023). That requirement is specific to § 1681e(b), which does

21

### III. Credit One willfully violated the FCRA.

Credit One also maintains that Ms. Suluki's willfulness claim—which, unlike a negligence claim, does not require actual damages resulting from an FCRA violation, *see* Opening Br. 10-11—cannot survive summary judgment. But none of its attempts to avoid liability as a matter of law succeed, largely because Credit One repeatedly ignores record evidence and caselaw that contradict its theories.

#### A. Ample evidence indicates that Credit One recklessly violated the FCRA.

**1.** Credit One's first line of defense is to repeat the claim that its investigations followed an extensive list of procedures (rather than a cursory blueprint of seeking out two links and requiring police reports) and so "cannot be reduced" to the type of cookie-cutter procedures that demonstrate recklessness. Resp. Br. 51, 57, 58-61. This account contradicts the record. As explained *supra*, investigators' account notes indicate that Perry and Reax sought out two superficial links between the account information and Ms. Suluki's information in LexisNexis before ending their investigations. And their supervisor testified that this was "compliant and adherent" with the procedures "management intended." JA-109. That creates, at minimum, a fact dispute as to whether the bank adopted a de facto policy authorizing

---

not direct credit reporting agencies to stop reporting unverifiable information. It does not apply to Ms. Suluki's claim under § 1681s-2(b), though, because § 1681s-2(b)(1) explicitly states that furnishers cannot report information that "cannot be verified."

investigators to end investigations—and to verify disputes—after a cursory review to identify two links between a consumer and an allegedly fraudulent account.

Similarly, Credit One maintains (at 61) that police reports and affidavits are only required for deleting an account from a credit report "where substantial evidence indicates that the claimant is responsible for the disputed account." But Mr. Perry was clear that, if a consumer seeks to have an account deleted, those documents are required as soon as investigators find just two links. JA-171-72. That, too, creates a fact dispute as to whether, after completing a cursory review to identify two links, the bank refuses to delete accounts without a police report or an FTC affidavit claiming fraud.

Notably, the bank has no meaningful explanation for why—assuming it has the de-facto policies described above—its investigative approach did not create a high risk of harm.[7] Nor could it. A heavy reliance on any two links for verification—which perhaps can then only be overturned by two specific documents—permits investigators to ignore evidence that, according to the bank's own policies and common sense, is crucial (like affidavits and direct links between the accused

_____

[7] Credit One's only potentially applicable defense (at 57) is that a blanket procedure shows consistency, not recklessness. But consistency doesn't preclude recklessness. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007) (explaining that recklessness creates "an unjustifiably high risk of harm that is either known or so obvious that it should be known"). Rather, it reinforces it when, like here, a furnisher repeatedly adheres to inadequate procedures, even after federal courts have told Credit One that its procedures are inadequate as a matter of law.

fraudster and the account). Opening Br. 54-55; *see supra* pp. 3-4. It also means that the only time investigators will actually catch fraud is when an identity thief starts an account with *less than two* of a consumer's personal identifiers, or if a consumer submits a police report and/or FTC affidavit. Opening Br. 55. But those situations are rare, because Credit One wouldn't approve an account application in the first instance without checking personal identifiers, and because consumers don't know that those specific documents are necessary for deletion. *Id.* Investigations, then, will rarely serve as an effective tool for catching identity theft, creating "an unjustifiably high risk of harm that is . . . so obvious that it should be known." *Safeco*, 551 U.S. at 68.

**2.** Given this, Credit One pivots (at 50) and attempts to seek safe harbor in *Safeco* based on the FCRA's "less-than-pellucid" text. But Credit One's obligations under the statutory text were abundantly clear. Courts of appeal have long held that an investigation requires a "searching inquiry"—based on the plain meaning of the word "investigate." *Johnson*, 357 F.3d at 430; *see Gorman*, 584 F.3d at 1155-57. They have also held that furnishers must tailor investigations to the nature of a consumer's dispute rather than relying on cursory, cookie-cutter procedures. *See Boggio*, 696 F.3d at 619; *Johnson*, 357 F.3d at 430-31; *Seamans v. Temple Univ.*, 744 F.3d 853, 866 (3d Cir. 2014); *Gorman*, 584 F.3d at 1157; Opening Br. 53. And they have additionally held that furnishers cannot justify their decision to end an investigation based on a

consumer's failure to provide a police reports or affidavits, specifically, because that improperly shifts their FCRA investigation burden to the consumer. *Hinkle*, 827 F.3d at 1306; *Boggio*, 696 F.3d at 619; *see Ingram v. Experian Info. Sols., Inc.*, 83 F.4th 231, 243 (3d Cir. 2023). Credit One disregarded all of these well-established principles in favor of a cursory, de-facto approach to verification.[8]

Credit One fails to grapple with any of these authorities. Instead, it defends its reliance on police reports (and only police reports) by pointing to statutory and regulatory language. Section 1681s-2(a), it maintains, shows that Congress intended furnishers to require police reports before deleting an account. But that section only requires furnishers to delete an account when they receive an identity theft report; it does not say that furnishers themselves may require identity theft reports as soon as they find information supporting verification. 15 U.S.C. § 1681s-2(a)(6). Credit One runs into the same roadblock with 12 C.F.R. § 1022.3, which, in Credit One's view (at 53), shows "the CFPB expects furnishers to require" a law enforcement report.

---

[8] Even if the FCRA weren't clear, a recklessness inquiry "need not necessarily turn squarely on a question of statutory interpretation" and can instead "depend more on context than on the [] reading of the statutory text." *McIntyre v. RentGrow, Inc.*, 34 F.4th 87, 96 (1st Cir. 2022). That is generally the case when the statute requires an assessment of reasonableness instead of interpretation of a technical statutory phrase—then "compliance [] turn[s] . . . on the facts." *Id.* That's why FCRA cases often have no "objectively unreasonable" inquiry. *Hinkle*, 827 F.3d at 1307; *Birmingham v. Experian Info. Solutions, Inc.*, 633 F.3d 1006 (10th Cir. 2011); *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142 (4th Cir. 2008).

The regulation says nothing of the sort. Rather, it simply defines an "identity theft report." 12 C.F.R. § 1022.3(i).

**3.** Credit One also tries to escape the fact that it had clear guidance on relying too heavily on superficial links and police reports from *Wood*—a case where a federal court held that Credit One's use of nearly identical procedures was unreasonable as a matter of law. 277 F. Supp. 3d at 851-53. Credit One says it was free to disregard that decision because it wasn't from a court of appeals (and thus lacks authority) and has different facts. But although *Safeco*'s discussion of the importance of "authoritative guidance" says that a court of appeals decision is sufficient for objective unreasonableness, nothing suggests that such a decision is necessary. 551 U.S. at 70. *Wood* is more authoritative than a court of appeals decision: it was issued *directly to Credit One*—a binding decision that "warned" Credit One that its practices were unacceptable. *Id.*

Nor did *Wood* deem Credit One's investigations unreasonable as a matter of law because of any factual difference with its investigation here. Credit One points out that, in *Wood*, there was a confession that the bank ignored. But *Wood*'s analysis focuses on Credit One's *investigative process*: As it explained, "merely compar[ing]" account information to personal identifiers "associated with" a consumer on LexisNexis—and requiring "a police report or a signed affidavit" upon finding links—is unreasonable. 277 F. Supp. 3d at 851-52. And it was "especially

26

unreasonable" when "the alleged identity thief is a family member who could have knowledge of or access to an individual's personal information—including social security number, address, and birthdate." *Id.* at 853 n.53. Here, as the account notes show, Credit One followed a similar process when faced with allegations of family fraud. *Wood*, in short, couldn't be more on point.[9]

## B. Credit One failed to meaningfully respond to Ms. Suluki's arguments on knowledge.

Credit One does not separately address why it did not knowingly violate the FCRA, relying instead on the various arguments it uses to defend against recklessness. By doing so, Credit One essentially concedes that—if its policies are deemed objectively unreasonable and *Wood* factually similar—there is a fact dispute as to whether the bank knew that its policies were noncompliant. That makes sense: the same Credit One executive involved in this case was also involved in and "aware of" *Wood*. JA-130.

Credit One also effectively concedes that its written fraud policies create an inference that the bank was aware that its de-facto two-link policy violates the FCRA.

---

[9] Credit One's claim (at 63) that "the tally is tied" because *Stewart v. Equifax Information Services, LLC*, 320 F. Supp. 3d 1186 (D. Kan. 2018), held that Credit One's procedures were reasonable is also wrong. In that case, the plaintiff pointed to no record evidence demonstrating the various deficiencies he alleged. *Id.* at 1204. But here, Ms. Suluki has pointed to abundant evidence supporting her assertions that Credit One relies on any two links for verification—which perhaps can then only be overturned by two specific documents. *See supra* pp. 9, 23.

That's because Credit One never argues that it's investigators actually followed its written policies—or explains why the chasm between those policies and investigators' actions doesn't suffice for showing knowledge. *Cf. Hinkle*, 827 F.3d at 1307 (finding that "negotiated clauses in [] purchase agreements . . . support[ed] the conclusion that [the furnisher]" had sufficient knowledge for willfulness). The bank's only relevant argument is that Credit One does not, in fact, follow a two-link policy, but again, that conclusion is precluded by a fact dispute.

Thus, a reasonable jury could conclude that, because of the more extensive nature of the bank's written policies as well as the district court's holding in *Wood*, Credit One knew that its investigations were unreasonable.

## CONCLUSION

This Court should reverse the district court's grant of summary judgment to Credit One.

February 9, 2024                    Respectfully submitted,

                                    */s/ Alisa Tiwari*
                                    ALISA TIWARI
                                    MATTHEW W.H. WESSLER
                                    GUPTA WESSLER LLP
                                    2001 K Street, NW
                                    Suite 850 North
                                    Washington, DC 20006
                                    (202) 888-1741
                                    *alisa@guptawessler.com*

                                    LEONARD A. BENNETT
                                    CRAIG CARLEY MARCHIANDO

28

CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, VA 23601

ABEL L. PIERRE
LAW OFFICE OF ABEL L. PIERRE, P.C.
140 Broadway, 46th Floor
New York, NY 10005
(212) 766-3323

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Local Rule 32.1(a) because it contains 6,993 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

February 9, 2024                             _/s/ Alisa Tiwari_
                                             Alisa Tiwari

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the Second Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Alisa Tiwari*
Alisa Tiwari